MORGAN, LEWIS & BOCKIUS LLP
CHRISTOPHER J. BANKS (SBN 218779)
cbanks@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    415.442.1000
Fax:   415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
JOHN V. GORMAN*
jgorman@morganlewis.com
1701 Market Street
Philadelphia, PA  19103-2921
Tel:    215.963.5000
Fax:   215.963.5001

*Pro hac vice application forthcoming

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT-PACKARD COMPANY,<br><br>                    Plaintiff,<br><br>        v.<br><br>NINESTAR IMAGE TECH LIMITED, NINESTAR TECHNOLOGY CO., LTD., and APEX MICROELECTRONICS CO., LTD.,<br><br>                    Defendants. | Case No.<br><br>COMPLAINT FOR PATENT INFRINGEMENT<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff Hewlett-Packard Company ("HP") brings this Complaint for patent infringement and avers as follows:

**PARTIES**

1. Plaintiff HP is a Delaware corporation with its principal place of business at 3000 Hanover Street, Palo Alto, California 94304.

2. HP was founded in 1939 in a Palo Alto garage by college friends William Hewlett and David Packard. Today, HP is among the largest and most innovative technology companies in the world. HP now employs more than 320,000 people to serve customers in more than 170 countries. In the last decade, HP has invested more than 20 billion dollars in research and development. The U.S. Patent and Trademark Office has awarded HP thousands of patents for its innovations.

3. Defendant Ninestar Image Tech Limited ("Ninestar China") is a company organized and existing under the laws of China, with its principal place of business at No. 3883, Zhuhai Avenue, Xiangzhou District, Zhuhai Guangdong, P.R. China 519060.

4. Ninestar China is engaged in the business of manufacturing, selling, offering for sale, and importing into the U.S. printer consumables, including ink cartridges for inkjet printers.

5. Defendant Ninestar Technology Co., Ltd. ("Ninestar USA") is a subsidiary of Ninestar China. Ninestar USA is a New Jersey corporation, with a principal place of business at 17950 East Ajax Circle, City of Industry, California 91748.

6. Ninestar USA is engaged in the business of manufacturing, selling, offering for sale, and importing into the U.S. printer consumables, including ink cartridges for inkjet printers.

7. Defendant Apex Microelectronics Co., Ltd. ("Apex") is a company organized and existing under the laws of China, with a principal place of business at No.63 North Mingzhu Road, Xiangzhou District, Zhuhai, Guangdong Province, P.R. China 519075.

8. Defendant Apex is engaged in the business of, among other things, manufacturing and selling electronic components for ink cartridges for inkjet printers.

9. Defendant Apex sells its products into the United States through its U.S. divisions, including Apex U.S. West, also known as "Nano Pacific Corporation," which has a principal place of business at 191 Beacon Street, South San Francisco, CA 94080.

**JURISDICTION**

10. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Defendant Ninestar China at least because, both directly and through its subsidiary Ninestar USA, it regularly engages in, solicits, and transacts business in the state of California, including by placing printer ink cartridges into the stream of commerce with the knowledge and intent that they will reach customers in California. Accordingly, Defendant Ninestar China knows that its actions will have consequences within the state of California. On information and belief, Defendant Ninestar China derives significant revenue from the sale and import of printer ink cartridges in California.

12. This Court has personal jurisdiction over Defendant Ninestar USA at least because it has its principal place of business in California. Further, Defendant Ninestar USA regularly engages in, solicits, and transacts business in the state of California, including by selling printer ink cartridges to customers in California. Accordingly, Defendant Ninestar USA knows that its actions will have consequences within California. On information and belief, Defendant Ninestar USA derives significant revenue from the sale of printer ink cartridges in California.

13. This Court has personal jurisdiction over Defendant Apex at least because, directly and through its U.S. divisions, it regularly engages in, solicits, and transacts business in the state of California, such as by placing electronic components for printer ink cartridges into the stream of commerce with the knowledge and intent that the ink cartridges containing its electronic components will reach customers in California. Accordingly, Defendant Apex knows that its actions will have consequences in California. On information and belief, Defendant Apex derives significant revenue from the sale of printer ink cartridges in California.

**VENUE**

14. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because all Defendants, directly and through their subsidiaries, agents, and/or divisions, transact

business in this district, have committed acts of patent infringement in this district, and are subject to personal jurisdiction in this district. In addition, venue is proper because HP's principal place of business is in this district and HP has suffered harm in this district.

## INTRADISTRICT ASSIGNMENT

15. This is an intellectual property action that is subject to district-wide assignment pursuant to Local Rule 3-2(c).

## FACTUAL BACKGROUND

### HP's Inkjet Printer and Cartridge Business

16. HP, one of the world's leading technology companies, is in the business of manufacturing and selling products that span the areas of printing, personal computing, software services, and IT infrastructure. No other company offers as complete a technology product portfolio as HP.

17. HP focuses on simplifying technology experiences for its customers, who range from individual consumers to the world's largest businesses.

18. The HP Imaging and Printing Group, one of HP's core business groups, is the recognized industry leader of the digital transformation of printing.

19. HP introduced the world's first consumer thermal inkjet printers in 1984.

20. Since then, HP has sold millions of inkjet printers and billions of printer cartridges in the United States and throughout the world.

21. Taken together, inkjet printers and ink cartridges that are used in the inkjet printers make up an inkjet "printing system."

22. HP's inkjet printing systems are popular because of their high print quality and quiet and fast operation, among other benefits.

23. Today, HP ships more than 1 million printers per week worldwide, and the International Data Corporation ranks HP as number one in inkjet and laser printer hardware market share.

**Defendants' Copycat Cartridge Business Activities**

24.     Among other activities, Defendants are in the business of manufacturing, selling, and/or importing copycat ink cartridges, or the electronic components contained in such cartridges, for use in HP inkjet printers.

25.     In general, an ink cartridge for use in an HP inkjet printer contains an electronic storage device.

26.     Defendant Apex manufacturers electronic storage devices for use in ink cartridges for HP printers that use 564, 920, 932/933, 950/951, and/or 970 series ink cartridges and/or substantially similar cartridges.

27.     Defendants Ninestar China and Ninestar USA manufacture and sell ink cartridges for use in HP inkjet printers that use 564, 920, 932/933, 950/951, and/or 970 series ink cartridges and/or substantially similar cartridges.

28.     On information and belief, at least some of the ink cartridges manufactured and sold by Defendants Ninestar China and Ninestar USA for use in HP printers that use 564, 920, 932/933, 950/951, and/or 970 series ink cartridges, and/or substantially similar cartridges, include in them electronic storage devices that were manufactured and sold by Defendant Apex.

**United States Patent No. 6,089,687**

29.     On July 18, 2000, United States Patent No. 6,089,687 ("the '687 patent"), entitled "Method and Apparatus for Specifying Ink Volume in an Ink Container," was duly and legally issued to HP as assignee. A true and correct copy of the '687 patent is attached hereto as Exhibit A.

30.     Throughout all relevant time periods including the present, HP was and is the owner by valid assignment of all right, title, and interest in and to the '687 patent.

31.     All Defendants had actual knowledge of the '687 patent prior to the commencement of this action. HP has previously asserted the '687 patent against Defendant Ninestar USA, which is a subsidiary of Defendant Ninestar China. Defendant Apex has made public statements about the '687 patent.

**United States Patent No. 6,264,301**

32. On July 24, 2001, United States Patent No. 6,264,301 ("the '301 patent"), entitled "Method and Apparatus for Identifying Parameters in a Replaceable Printing Component," was duly and legally issued to HP as assignee. A true and correct copy of the '301 patent is attached hereto as Exhibit B.

33. Throughout all relevant time periods including the present, HP was and is the owner by valid assignment of all right, title, and interest in and to the '301 patent.

34. All Defendants had actual knowledge of the '301 patent prior to the commencement of this action. HP has previously asserted the '301 patent against Defendant Ninestar USA, which is a subsidiary of Defendant Ninestar China. Defendant Apex has made public statements about the '301 patent.

**United States Patent No. 6,454,381**

35. On September 24, 2002, United States Patent No. 6,454,381 ("the '381 patent"), entitled "Method and Apparatus for Providing Ink Container Extraction Characteristics to a Printing System," was duly and legally issued to HP as assignee. A true and correct copy of the '381 patent is attached hereto as Exhibit C.

36. Throughout all relevant time periods including the present, HP was and is the owner by valid assignment of all right, title, and interest in and to the '381 patent.

37. Defendant Apex had actual knowledge of the '381 patent at least from the filing of this action.

**COUNT I**

**Infringement of the '687 Patent By All Defendants**

38. HP hereby incorporates by reference the allegations set forth in the previous paragraphs as though fully set forth herein.

39. Defendant Apex, directly and through its subsidiaries, agents, and/or divisions, has made, used, offered to sell, sold, and/or imported into the United States and this judicial district, and placed into the stream of commerce, electrical storage devices for ink cartridges (such as those made and sold by Defendants Ninestar China and

Ninestar USA) for HP printers that use 564, 920, 932/933, 950/951, and 970 series ink cartridges, and/or substantially similar cartridges, which infringe at least one claim of the '687 patent, in violation of at least 35 U.S.C. § 271(a) and (c).

40. The electrical storage devices made and sold by Defendant Apex for ink cartridges (such as those made and sold by Defendants Ninestar China and Ninestar USA) for HP printers that use 564, 920, 932/933, 950/951, and 970 series ink cartridges, and/or substantially similar cartridges, are especially made or adapted for infringing the '687 patent, and have no substantial non-infringing uses.

41. Defendant Apex had actual knowledge of the '687 patent before the filing of this action, and, upon information and belief, actual knowledge of its infringement thereof, but acted despite an objectively high likelihood that its actions would infringe a valid patent.

42. Defendants Ninestar China and Ninestar USA, directly and through their subsidiaries, agents, and/or divisions, have made, used, offered to sell, sold, and/or imported into the United States and this judicial district, and placed into the stream of commerce, ink cartridges containing electrical storage devices (such as those made and sold by Defendant Apex) for use in HP printers that use 564, 920, 932/933, 950/951, and 970 series cartridges, and/or substantially similar cartridges, which infringe at least one claim of the '687 patent, in violation of at least 35 U.S.C. § 271(a).

43. Upon information and belief, Defendants Ninestar China and Ninestar USA had actual knowledge of the '687 patent before the filing of this action, but acted despite an objectively high likelihood that their actions would infringe a valid patent.

44. By reason of Defendants' acts of infringement, HP has suffered and continues to suffer damages, including impairment of the value of the '687 patent, in an amount to be determined at trial.

45. Defendants' acts of infringement of the '687 patent are causing irreparable harm to HP and will continue to cause irreparable harm unless enjoined by this Court.

46. Upon information and belief, Defendants' infringement of the '687 patent has been and is willful, intentional, and conscious, which justifies a trebling of damages pursuant to 35 U.S.C. § 284.

## COUNT II

### Infringement of the '301 Patent By All Defendants

47. HP hereby incorporates by reference the allegations set forth in the previous paragraphs as though fully set forth herein.

48. Defendant Apex, directly and through its subsidiaries, agents, and/or divisions, contributed to the infringement of the '301 patent by selling, offering to sell, and/or importing into the United States electrical storage devices for ink cartridges (such as those made and sold by Defendants Ninestar China and Ninestar USA) for HP printers that use 564, 920, 932/933, 950/951, and 970 series ink cartridges, and/or substantially similar cartridges, in violation of at least 35 U.S.C. § 271(a) and (c).

49. The electrical storage devices made and sold by Defendant Apex for ink cartridges (such as those made and sold by Defendants Ninestar China and Ninestar USA) for HP printers that use 564, 920, 932/933, 950/951, and 970 series ink cartridges, and/or substantially similar cartridges, are especially made or adapted for infringing the '301 patent, and have no substantial non-infringing uses.

50. Defendant Apex had actual knowledge of the '301 patent before the filing of this action, and, upon information and belief, actual knowledge of its infringement thereof, but acted despite an objectively high likelihood that its actions would infringe a valid patent.

51. Defendants Ninestar China and Ninestar USA, directly and through their subsidiaries, agents, and/or divisions, have made, used, offered to sell, sold, and/or imported into the United States and this judicial district, and placed into the stream of commerce, ink cartridges containing electrical storage devices (such as those made and sold by Defendant Apex) for use in HP printers that use 564, 920, 932/933, 950/951, and

COMPLAINT FOR PATENT INFRINGEMENT

970 series cartridges, and/or substantially similar cartridges, which infringe at least one claim of the '301 patent, in violation of at least 35 U.S.C. § 271(a).

52. Upon information and belief, at all relevant times, Defendants Ninestar China and Ninestar USA had actual knowledge of the '301 patent before the filing of this action, but acted despite an objectively high likelihood that their actions would infringe a valid patent.

53. By reason of Defendants' acts of infringement, HP has suffered and continues to suffer damages, including impairment of the value of the '301 patent, in an amount to be determined at trial.

54. Defendants' acts of infringement of the '301 patent are causing irreparable harm to HP and will continue to cause irreparable harm unless enjoined by this Court.

55. On information and belief, Defendants' infringement of the '301 patent has been and is willful, intentional, and conscious, which justifies a trebling of damages pursuant to 35 U.S.C. § 284.

## COUNT III

### Infringement of the '381 Patent By All Defendants

56. HP hereby incorporates by reference the allegations set forth in the previous paragraphs as though fully set forth herein.

57. Defendant Apex, directly and through its subsidiaries, agents, and/or divisions, contributed to the infringement of the '381 patent by selling, offering to sell, and/or importing into the United States electrical storage devices for ink cartridges (such as those made and sold by Defendants Ninestar China and Ninestar USA) for HP printers that use 564 and/or 920 series ink cartridges, and/or substantially similar cartridges, in violation of at least 35 U.S.C. § 271(c).

58. The electrical storage devices made and sold by Defendant Apex for ink cartridges (such as those made and sold by Defendants Ninestar China and Ninestar USA) for HP printers that use 564 and/or 920 series ink cartridges, and/or substantially similar cartridges, are especially made or adapted for infringing the '381 patent, and have no substantial non-infringing uses.

59. Defendant Apex had actual knowledge of the '381 patent and actual knowledge of its infringement thereof at least from the filing of this action.

60. Defendants Ninestar China and Ninestar USA, directly and through their subsidiaries, agents, and/or divisions, have made, used, offered to sell, sold, and/or imported into the United States and this judicial district, and placed into the stream of commerce, ink cartridges containing electrical storage devices (such as those made and sold by Defendant Apex) for use in HP printers that use 564 and/or 920 series cartridges, and/or substantially similar cartridges, which infringe at least one claim of the '381 patent, in violation of at least 35 U.S.C. § 271(a).

61. By reason of Defendants' acts of infringement, HP has suffered and continues to suffer damages, including impairment of the value of the '381 patent, in an amount to be determined at trial.

62. Defendants' acts of infringement of the '381 patent are causing irreparable harm to HP and will continue to cause irreparable harm unless enjoined by this Court.

*   *   *

63. This is an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

## RELIEF REQUESTED

WHEREFORE, HP requests that the Court enter a judgment in its favor and against Defendants, and provide HP the following relief:

A. Order, adjudge, and decree that Defendants Ninestar China, Ninestar USA, and Apex have infringed the '687 patent, the '301 patent, and the '381 patent, in violation of 35 U.S.C. § 271;

B. Issue preliminary and permanent injunctive relief prohibiting Defendants Ninestar China, Ninestar USA, and Apex, and their respective parents, subsidiaries, divisions, principals, officers, directors, agents, attorneys, employees, and all others in privity with each Defendant, from infringing the '687 patent, the '301 patent, and the '381 patent, pursuant to 35 U.S.C. § 283;

C. Award HP damages for patent infringement, pursuant to 35 U.S.C. § 284;

D. Order, judge, and decree that Defendants' infringement of the '687 patent and the '301 patent has been deliberate, willful, and wanton, and treble the damages awarded to HP, pursuant to 35 U.S.C. § 284;

E. Order, judge, and decree this case exceptional and award HP attorney's fees and costs, pursuant to 35 U.S.C. § 285; and

F. Award HP such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff HP hereby demands a trial by jury for each and every issue so permitted by law and statute.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated: October 6, 2014

By  /s/ Christopher J. Banks
Christopher J. Banks (SBN 218779)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: 415.442.1000
Fax: 415.442.1001
cbanks@morganlewis.com

John V. Gorman (*pro hac vice* application forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
jgorman@morganlewis.com

*Attorneys for Plaintiff*

Morgan, Lewis & Bockius LLP
Attorneys at Law

12

COMPLAINT FOR PATENT INFRINGEMENT